Final Decision
I. Background
This appeal is employee related. The Appellant Keith Cottrell is appealing the Oneida Personnel Commission decision to uphold the termination from the Oneida Bingo & Casino Slot Department. We affirm the decision of the Oneida Personnel Commission.
On September 25, 2008 Appellant received the notice of termination for Work Performance, V.D.2.I, Work Performance, subsection e. The disciplinary action notice states under Date and Description of Inci *115 dents: “On 9/14/08 Keith failed to complete his compliance checks; Also he has a WW dated 2-22-08 that was upheld, a WW on 5-12-08 that was upheld & a Suspension on 5-12-08 that was upheld.”
The Appellant failed to complete his compliance checks which led to the termination.
In the documentation submitted were an explanation of the compliance checklists and the importance of the timeliness in which to have the compliance checks completed.
Each supervisor is assigned an equal number of machines (approximately 100) to check each month. In a Memorandum dated December 8, 2006 that had been sent to Slot Supervisors, Slot Tech Supervisors, from David Emerson, Assistant Slot Director concerning Clarification RE: Compliance Checklists.

The purpose of this memo is to provide clarification and to answer some questions that have been raised regarding the new supervisor compliance checklists and how they are to be completed.

One primary source of questions is the IGS portion of the checklist. Again, each supervisor will be assigned an equal number of machines (approximately 100) to check each month. The expectation, until further notice is that each supervisor, pri- or to completing their checks, must randomly select 20 machines (out of the 100) to check the IGS on. For each of these 20 machines, the supervisor must print out the machine activity for the most recent five-day period from the IGS Machine Event Inquiry, highlighting the events of interest (machine entries). These printed pages are to be compared with the corresponding five-day period in the machine access log books. Once again, you are to be looking for information that is missing from the machine access logs. All other checks besides the IGS Follow Up must be completed, for all 100 machines assigned.

If it is determined or simply noticed that information is missing from the machine access logs (legible signatures, employee numbers, reason for access, etc.), the appropriate space in the access lag book is to be highlighted. The supervisor must then write in the margin of the log book page “being investigated” along with the supervisor’s initials. These words are also to be highlighted. The Security Department must then be contacted so that a Procedure Infraction can be completed and issued for tracking and documentation purposes. It is expected that, once the offending employee is identified, appropriate corrective action will take place.

When simply checking the machine assess log book for legible signatures, employee numbers, and reasons for entry, you are expected to look at entries from the most recent 30 days or dating back to the last time the log book was inspected for a checklist, whichever point in time is the more recent. Again, each boa: in the checklist matrix should contain either an “OK” (no errors found/no follow up needed) or an “X” (errors found/follow up needed). However, for the machines that a,re not a part, of the 20-machine IGS sample, there should be an “N/A” in the IGS Follow Up column. Anytime an “X” is written in the checklist matrix, an explanation of the follow up performed must be noted on the back of the checklist form.

If you are uncertain what you are looking for (logic board seals, loose wires, etc.), please ask a Slot Tech or another experienced employee. The more that you know about how the machines are supposed to operate, the better. In all instances, the machines should, be briefly scanned for compliance issues-not inspected in fine detail. One should not be inside a ma
*116
chine checking for compliance issues for more than a few minutes.

Finally, these checklists are to be completed by the supervisors themselves. They are not to be delegated to SSR’s or Slot Techs. If there are any additional questions, please do not hesitate to ask. Thank you.

The Appellant failed to complete his checklist.
Appellant filed a timely appeal to the Oneida Personnel Commission. After a requested postponement a grievance hearing was rescheduled.
A grievance hearing was held on February 19, 2009 and the case was remanded back to the Area Manager, David Emerson, due to new evidence presented to the Oneida Personnel Commission.
The Area Manager, David Emerson, submitted his decision to uphold the termination to the Oneida Personnel Commission on March 10, 2009. A grievance hearing was held on April 7, 2009.
II. Issues
The Supervisor had checked the wrong box on the Disciplinary Action form. He checked “Other” instead of “Accumulated Disciplines.” Is this sufficient evidence to overturn the discipline?
The Supervisor did not follow progressive disciplinary procedures.
The Supervisor was retaliating against the Appellant because of the negative comments made on a “Tech Survey.”
III. Analysis
The Supervisor checked the wrong box on the Disciplinary Action form. He checked “Other” instead of “Accumulated Disciplines.” Is this sufficient evidence to overturn the discipline?
No, this is insufficient evidence to overturn the disciplinary action issued.
The Oneida Personnel Commission remanded the case back to the Area Manager, David Emerson, to investigate. When Area Manager, David Emerson investigated why Appellant Braaten had marked “Other” Braaten stated that he had mistakenly checked “Other” when he intended to check “Accumulated Disciplines.” On the Disciplinary Action form where Respondent checked OTHER: (List other infraction(s) in the Date and Description) he listed out the accumulation of the other infractions. References the Oneida Personnel Policies and Procedures V.D.3.a. The accumulation of three (3) upheld learning notices within any twelve (12) month peñod. (T) The Area Manager concluded in his investigation:
“While this certainly was an error, I find that it does not rise to the level of a reversible (serious) error. I reach this conclusion based on the fact that the ‘Date and Description of Incident’ section of the form clearly states that the termination is based on the three upheld disciplinary actions from earlier in the year.”
The Area Manager further stated “Had this information not been so clearly presented on the form, then the appeal argument might carry more weight.”
The Supervisor did not follow progressive disciplinary procedures.
Yes, the Supervisor did follow progressive disciplinary procedures. The Appellant alleges that his Supervisor did not use progressive disciplinary procedures. The Supervisor at that point in time had fulfilled guidelines for progressive discipline because employee had already accumulated three upheld disciplinary actions. Through oral testimony the Supervisor stated he had worked with the Appellant *117 on other infractions that had occurred over time and not acted on them against Appellant under the accumulation rule. The Appellant already had three (3) upheld disciplines and could be terminated for cause within one (1) year of the upheld disciplines. The Appellant acknowledged the upheld written warnings issued on February 22, 2008 and May 12, 2008, and an upheld suspension on May 12, 2008. The Area Manager confirmed the Appellant had three (3) upheld disciplines.
The Supervisor was retaliating against the Appellant because of the negative comments made on a “Tech Survey.”
This statement was not supported by the evidence. The oral and written testimony provided to the Oneida Personnel Commission revealed no evidence of retaliation and also showed that other employees who, like Appellant, had given negative comments, were not disciplined. Other Tech Supervisors testified they had also given negative feedback regarding Slot Management and did not feel retaliated against in any way.
In the oral testimony received from the Oneida Personnel Commission, Appellant stated he did not believe that Respondent Braaten had retaliated against him. However, Appellant stated he believed that it was Mr. Emerson that retaliated against him. There is insufficient evidence to prove that Supervisor Braaten or Assistant Slot Director David Emerson had retaliated against the Appellant concerning the Tech Survey that had gone out to all employees in the Slot Department.
IV. Decision
This Appellate Court concurs with the Oneida Personnel Commission’s decision to uphold the termination. The decision to terminate Mr. Cottrell’s employment is affirmed. It is so ordered.